## MATTER OF VIGIL

## In Deportation Proceedings

### A-26787128

*Decided by Board March 17, 1988*

(1) The group of young, male, urban, unenlisted Salvadorans does not constitute a "particular social group" within the meaning of sections 101(a)(42)(A) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(42)(A) and 1253(h) (1982).

(2) An alien who merely testifies at his deportation hearing that he wishes to remain neutral in the midst of the civil conflict in his native country does not thereby establish a well-founded fear of persecution on account of a political opinion pursuant to section 208(a) of the Act, 8 U.S.C. § 1158(a) (1982).

(3) The forcible recruitment of young males by a guerrilla organization does not constitute persecution within the meaning of the Act.

(4) A sovereign government does not engage in persecution when it drafts its citizens in order to raise an army and protect the country.

(5) An alien's testimony that he fears persecution in his native country because he applied for asylum in the United States is insufficient to establish eligibility for asylum under section 208(a) of the Act, where the alien has not shown that persons in his native country are harmed because they applied for asylum here.

(6) An immigration judge is not required to make credibility findings in every case.

(7) An immigration judge is required to admit the Department of State Bureau of Human Rights and Humanitarian Affairs advisory opinion into evidence in an asylum case, pursuant to 8 C.F.R. § 208.10(b) (1988).

(8) Evidence of conditions in an alien's native country is admissible in support of an asylum application, but the ultimate test for asylum eligibility is whether the particular alien has good reasons to fear persecution.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Richard L. Iandoli, Esquire
59 Temple Place
Boston, Massachusetts 02111

ON BEHALF OF SERVICE:
John M. Furlong
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

This is an appeal from the oral decision of the immigration judge dated June 5, 1985, denying the respondent asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1253(h) (1982), and granting the respondent the privilege of voluntary departure in lieu of deportation. The appeal will be dismissed. The respondent's request for oral argument is denied.

The respondent is a 20-year-old native and citizen of El Salvador. He entered the United States without inspection on or about December 17, 1984. At his deportation hearing, the respondent conceded that he was deportable as charged in the Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S). We therefore find that the respondent's deportability has been established by clear, unequivocal, and convincing evidence as required by *Woodby v. INS*, 385 U.S. 276 (1966), and 8 C.F.R. § 242.14(a) (1988).

The immigration judge concluded that the respondent was not eligible for asylum or withholding of deportation because he did not demonstrate a well-founded fear of persecution based on his membership in a particular social group or his political opinion. The respondent contends that this determination was "erroneous as a matter of law" and "unsupported by substantial evidence." He stresses on appeal that he has met his burden of establishing relief under sections 208(a) and 243(h) of the Act, and, in addition, he contends that the immigration judge made several procedural errors which merit a remand for a new hearing.

Section 208(a) of the Act provides the Attorney General with the discretion to grant asylum to any alien who qualifies as a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1982). That section defines a "refugee" as

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

The alien bears the burden of establishing eligibility for asylum. *See* 8 C.F.R. § 208.5 (1988).

Under section 243(h) of the Act, the Attorney General does not have discretion and "shall not" deport an alien to a country if he determines that "such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." The alien also bears the burden of establishing eligibility for withholding of

deportation. 8 C.F.R. § 242.17(c) (1988); *see also INS v. Stevic,* 467 U.S. 407, 423 n.16 (1984). In *INS v. Stevic, supra,* at 430, the Supreme Court concluded that an alien must show a "clear probability of persecution" in order to establish eligibility for section 243(h) relief.

Subsequent to the immigration judge's decision in this case, the Supreme Court also decided in *INS v. Cardoza-Fonseca,* 480 U.S. 421 (1987), that there is a significant difference between the section 208(a) and section 243(h) standards for relief and that an alien need not show a "clear probability of persecution" in order to be eligible for asylum. In *Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987), we adopted the "reasonable person" standard, first enunciated by the United States Court of Appeals for the Fifth Circuit in *Guevara Flores v. INS,* 786 F.2d 1242 (5th Cir. 1986), *cert. denied,* 480 U.S. 930 (1987), for the adjudication of asylum cases. The *Guevara Flores* court had stated that "[a]n alien possesses a well-founded fear of persecution if a reasonable person in her circumstances would fear persecution if she were to be returned to her native country." *Id.* at 1249.

Turning to the merits of this respondent's asylum application, we find that the respondent has not shown that he qualifies as a "refugee" as defined in the Act. As the Supreme Court stated in *INS v. Stevic, supra,* at 423 n.18, "[I]n order to be eligible for asylum, an alien must meet the definition of refugee contained in § 101(a)(42)(A). . . ." The respondent here fails to meet that definition because he has not demonstrated a well-founded fear of persecution "on account of" any of the five grounds enumerated in section 101(a)(42)(A) of the Act.

The respondent submits that he belongs to a "particular social group" consisting of young, male, unenlisted, urban Salvadorans, and that he fears persecution because he belongs to this group. In *Matter of Sanchez and Escobar,* 19 I&N Dec. 276 (BIA 1985), *aff'd, Sanchez-Trujillo v. INS,* 801 F.2d 1571 (9th Cir. 1986), we rejected the argument that a group of "young . . . , urban, working-class males of military age who have not served in the military" constitutes a "particular social group," because the respondents there had not established "the existence of a 'particular social group' which is persecuted on account of the group's specific identifying characteristics." *Id.* at 285-86. The Ninth Circuit affirmed this conclusion, holding that the group of "young, working class, urban males of military age does not exemplify the type of 'social group' for which the immigration laws provide protection from persecution." *Sanchez-Trujillo v. INS,* 801 F.2d 1571, 1576-77 (9th Cir. 1986).

In *Ananeh-Firempong* v. *INS,* 766 F.2d 621 (1st Cir. 1985), the Court of Appeals for the First Circuit, in which this respondent's case arises, discussed the meaning of a "particular social group" in the context of a section 243(h) case. The court endorsed the following language as being central to a determination of what constitutes a particular social group: " '[S]ocial group' persecution must be based on a 'characteristic that either is beyond the power of an individual to change or is so fundamental to individual identity or conscience that it ought not to be required to be changed.' " *Id.* at 626 (citation omitted) (quoting *Matter of Acosta,* 19 I&N Dec. 211 (BIA 1985)). *Ananeh-Firempong* concerned a citizen of Ghana who had made statements in her affidavit regarding persecution of her family, her tribe, and persons of her political persuasion. The group of young, urban, unenlisted Salvadorans was not at issue in *Ananeh-Firempong.* The factors which identify the respondent's group in the instant case (age, living environment, military status), however, are not factors that are "fundamental to individual identity or conscience." Under the analysis of the First Circuit in *Ananeh-Firempong,* then, the respondent's group would not appear to qualify as a "particular social group" for "refugee" purposes; and, according to this Board's reasoning in *Matter of Sanchez and Escobar, supra,* the group of "male, young, urban, unenlisted" Salvadorans definitely does not constitute a "particular social group" within the meaning of section 101(a)(42)(A).

The respondent also contends that he fears persecution on account of his "political opinion." In this regard the respondent relies heavily on the Ninth Circuit Court of Appeals' holding in *Bolanos-Hernandez* v. *INS,* 767 F.2d 1277, 1287 (9th Cir. 1984), that "an individual's choice [for neutrality] . . . constitutes . . . a manifestation of political opinion."

The respondent testified about three incidents in El Salvador which are the primary basis of his persecution claim. First, he stated that, while he was on his way to school one day in 1979, he saw a young man who had been beheaded. The respondent did not know the victim but asserted that, when he saw the beheaded young man, he began to fear that he would have a similar fate. Consequently, the respondent stated: "I decided that the only way to be safe was to try to stay completely quiet and neutral." Second, he testified that on another occasion the guerrillas came to a soccer game, which the respondent was planning to attend but did not because he was ill, and forced some of the participants to join the guerrilla effort. Friends of the respondent who had evaded the guerrillas related this incident to him. Finally, the respondent testified that on El Salvador's election day in March 1984, a street

fight broke out in his home town between the guerrillas and government forces. The skirmish lasted 8 hours; a young man was killed in front of the respondent's house; and the respondent hid under his bed while the fighting occurred.

The respondent also testified that he had never been arrested, had never demonstrated, and had never distributed political pamphlets when he was in El Salvador. When questioned by his own counsel as to whether he had been politically active in El Salvador, the respondent simply stated, "No." He answered affirmatively, however, when asked whether he described himself as "neutral as far as the civil war goes."

Because of his "neutral stance" as between the guerrillas and the Government in El Salvador, the respondent now contends that, in accordance with *Bolanos-Hernandez v. INS, supra,* he is eligible for asylum. The rationale of *Bolanos-Hernandez* that "neutrality is a political opinion" has not been accepted or rejected by any of the federal courts of appeals outside the Ninth Circuit. *See, e.g., Cruz-Lopez v. INS,* 802 F.2d 1518, 1520 n.3 (4th Cir. 1986) (expressing no opinion as to whether neutrality constitutes a "political opinion" within the meaning of the Act). If the holding in *Bolanos-Hernandez* could be read to require a finding that the respondent here, who apparently has only expressed his "neutrality" opinion during his deportation hearing in this country, has established eligibility for asylum, then we would certainly restrict the applicability of *Bolanos-Hernandez* to cases arising in the Ninth Circuit. Indeed, if we were to conclude that an alien can demonstrate a well-founded fear of persecution merely by testifying at his deportation hearing that he wishes to remain neutral in the midst of an ongoing civil war in his native country, then there would be no meaningful distinction between the "neutrality is a political opinion" series of cases and the line of cases which hold that the fear of general conditions of violence in a country does not give rise to a well-founded fear of persecution. *Compare Bolanos-Hernandez v. INS, supra,* and the cases cited below, *with Matter of Mogharrabi, supra,* at 439, and the cases cited therein.

Moreover, this respondent's case does not appear to fit within the scope of the *Bolanos-Hernandez* rationale as that rationale has developed in subsequent cases in the Ninth Circuit. In cases decided since *Bolanos-Hernandez v. INS, supra,* the Ninth Circuit Court of Appeals has required that, to establish a well-founded fear of persecution on account of a "neutrality" opinion, the alien must show: 1) that he has articulated and affirmatively made a decision to remain neutral; and 2) that he has received some threat or could be "singled out" for persecution *because of* the neutrality opinion.

*See Arteaga* v. *INS,* 836 F.2d 1227 (9th Cir. 1988); *Turcios* v. *INS,* 821 F.2d 1396, 1401 (9th Cir. 1987); *Zayas-Marini* v. *INS,* 785 F.2d 801, 806 n.13 (9th Cir. 1986); *Vides-Vides* v. *INS,* 783 F.2d 1463, 1467 n.2 (9th Cir. 1986); *Diaz-Escobar* v. *INS,* 782 F.2d 1488, 1493–94 (9th Cir. 1986); *Del Valle* v. *INS,* 776 F.2d 1407 (9th Cir. 1985); *Lopez* v. *INS,* 775 F.2d 1015 (9th Cir. 1985).[1] The respondent here, he admits, did not express his desire to remain neutral to anyone when he was in El Salvador. Rather, he kept quiet about this desire. The respondent was not threatened by the guerrillas or the Government because of his neutrality opinion.[2] There is no indication in the record that he ever had any direct contact with the guerrilla or government forces in El Salvador. Therefore, the respondent's case is factually dissimilar to *Bolanos-Hernandez* and the subsequent Ninth Circuit cases, and the respondent has failed to show a reasonable fear of persecution on account of a political opinion.

There are additional reasons why we believe that this respondent has not shown a well-founded fear of persecution in El Salvador. With respect to his fear of persecution from the guerrillas, the respondent stated: "I was afraid that the guerrillas might try to force me to join them, as they had done to others." The evidence in the record supports the respondent's statement that the guerrillas forcefully recruit young Salvadoran males. The purpose of this recruitment, however, is to further the guerrillas' objective of overthrowing the Salvadoran Government; the intent of the recruitment is not the persecution of young Salvadoran males on account of one of the five grounds listed in the Act.[3] As such, all nonaligned Salvadoran males have a fear of being approached, and perhaps recruited against their will, by the guerrillas. We do not view

---

[1] In *Argueta* v. *INS,* 759 F.2d 1395 (9th Cir. 1985), where the alien received a direct threat from a "death squad" because of suspected membership in a guerrilla organization, he did establish section 208(a) eligibility without showing a link between his neutrality opinion and his fear of persecution.

[2] If the respondent fears punishment from the Government solely because he has avoided military service in El Salvador, that fear is insufficient to make him a "refugee" within the meaning of the Act. *See infra* notes 5–6.

[3] In addition, although young, male, urban Salvadorans may be subject to a greater risk of harm than others in El Salvador, it does not follow, nor has the respondent shown, that the group is being "singled out" for persecution "on account of" one of the five grounds enumerated in the Act. Persons who are at great risk of harm because of general conditions of violence in their country, as well as "displaced persons," are not *per se* refugees within the meaning of the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102. *See Campos-Guardado* v. *INS,* 809 F.2d 285, 290 (5th Cir. 1987); *Sanchez-Trujillo* v. *INS, supra,* at 1577; *Matter of Sanchez and Escobar, supra,* at 284–85; *Matter of Acosta, supra,* at 223 n.10; *cf. Amanullah* v. *Nelson,* 811 F.2d 1, 12 (1st Cir. 1987).

the guerrillas' interest in such persons, where the guerrillas' interest in the person is clearly limited to recruitment, to amount to "persecution" within the meaning of the Act.[4] *See Matter of Maldonado*, 19 I&N Dec. 509 (BIA 1988); cf. *Arteaga* v. *INS, supra.*

The evidence in the record also indicates that, according to Salvadoran law, all young men are subject to conscription. The respondent stated that he "knew that young men were required to join the army at the age of eighteen." The respondent states in the brief in support of his appeal that he fears being conscripted by the army, and he is afraid of being killed if he joins the army.

The respondent's fear of "persecution" because he would have to perform military service in El Salvador is not well founded. It is a long-established principle of international law that a sovereign government has the right to draft its citizens and maintain an army for the purpose of self-defense.[5] The Salvadoran Government, then, would be acting in accordance with its own and international law if it drafted the respondent. We have consistently taken the position that a government's drafting a person for military service does not constitute "persecution," and that a person who fears returning to a given country only because of a prior unwillingness to perform military service there has not demonstrated eligibility for asylum. *See, e.g., Matter of Lee*, 13 I&N Dec. 236 (BIA 1969); *Matter of Liao*, 11 I&N Dec. 113 (BIA 1965). Hence, the respondent here, who testified that he is afraid of having to join the army at the risk of being killed, has not established by means of his fear of conscription that he is eligible for asylum.[6]

---

[4] The possibility that some of the respondent's friends were "kidnapped" at the soccer game and forced to join the guerrillas does not strengthen the respondent's persecution claim. Even if some of the respondent's friends are now committed to the guerrilla cause and these same friends would recognize the respondent, they would be interested in the respondent as a possible soldier. They would most likely wish to recruit the respondent. But this does not mean that they would or might persecute him within the meaning of the Act, especially in light of the respondent's testimony that he kept quiet in El Salvador and kept his "neutrality" views to himself. Cf. *Arteaga* v. *INS, supra.*

[5] *See, e.g., The Selective Draft Law Cases*, 245 U.S. 366, 378 (1918), in which then Chief Justice White stated: "It may not be doubted that the very conception of a just government and its duty to the citizen includes the reciprocal obligation of the citizen to render military service in case of need and the right to compel it. Vattel, Law of Nations, bk. 3, chaps. 1 and 2." *See also Nishikawa* v. *Dulles*, 356 U.S. 129 (1959); G. Von Glahn, *Law Among Nations* 126 (1986); H. Wheaton, *Elements of International Law* 81 (1972).

[6] The United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* para. 168, at 40 (Geneva, 1979), provides: "A person is clearly not a refugee if his only reason for desertion or draft evasion is his dislike of military service or fear of combat."

The foregoing is not intended to suggest that there are no circumstances under which a person who fears punishment for draft evasion can establish eligibility for asylum. An alien could, of course, qualify for asylum on the basis of reasons unrelated to his unwillingness to perform military service. Alternatively, an alien who has refused to perform military service could qualify as a "refugee" by showing that, if returned to a certain country, he might suffer disproportionate punishment for his military offense "on account of" one of the five enumerated grounds. *See* Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* 40 (Geneva, 1979); *see also Matter of A–G–,* 19 I&N Dec. 502 (BIA 1987). The respondent in the instant case, though, has not demonstrated any possibility of such disproportionate punishment, nor has he demonstrated eligibility for asylum on other grounds.

As a final basis for relief under section 208(a) of the Act, the respondent suggests that he could be persecuted if returned to El Salvador because he has applied for asylum in the United States. The respondent states in his brief: "The government, by now, must note [the respondent's] absence from the country. . . . [I]t would not take long for the government to discover that he sought political asylum in the U.S. and the reasons for it." The respondent has submitted articles in support of his asylum application which indicate that some Salvadorans deported from the United States have been killed or have disappeared after they were returned to El Salvador. There is no evidence in these articles, however, which establishes that the tragedy which befell these Salvadorans upon their return to El Salvador occurred because they had applied for asylum in the United States. Nor is there any other evidence in the record which establishes that the Salvadoran Government is inclined to persecute persons simply because they applied for asylum in the United States. We therefore conclude that the respondent has not demonstrated a well-founded fear of persecution in El Salvador on the basis of his application for asylum in this country.

Because the respondent has not shown that he belongs to a "particular social group" within the meaning of section 101(a)(42)(A) of the Act or that he has a reasonable fear of persecution on account of a political opinion, the respondent has not met his burden of establishing that he is eligible for a grant of asylum under section 208(a) of the Act. His section 243(h) claim for withholding of deportation must also fail because the respondent has not shown that he belongs to a "particular social group" or has a "political opinion" for which his "life or freedom would be threatened."

The respondent also claims that the immigration judge made various procedural errors, which require either that the case be remanded or that the immigration judge's decision be reversed. The respondent's first procedural argument is that it was error for the immigration judge to deny the respondent's asylum request without having made credibility findings. He cites *Garcia-Ramos* v. *INS*, 775 F.2d 1370 (9th Cir. 1985), for the proposition that, where an alien would establish eligibility for asylum if his testimony were believed, then the Board must carefully explain why it finds that alien's testimony not to be credible. *Garcia-Ramos* is inapposite to this case, however, since the respondent's credibility here was not at issue. The immigration judge denied the respondent's asylum application because the judge found that the respondent had failed to demonstrate a well-founded fear of persecution on account of membership in a particular social group or political opinion. In his decision, however, the immigration judge did not address the issue of the respondent's credibility, apparently accepting the respondent's testimony as truthful. *Garcia-Ramos* v. *INS*, *supra*, does not require that an immigration judge make a credibility determination in every case, and the fact that the immigration judge did not make such a determination in this case does not constitute a procedural error. *See also Damaize-Job* v. *INS*, 787 F.2d 1332, 1338 (9th Cir. 1986); *Canjura-Flores* v. *INS*, 784 F.2d 885, 889 (9th Cir. 1985).

The respondent next contends that it was error for the immigration judge to admit into evidence the Department of State Bureau of Human Rights and Humanitarian Affairs ("BHRHA") advisory opinion concerning the respondent. The respondent objects to the BHRHA opinion because it is a form letter which does not address the specifics of the respondent's asylum application. The immigration judge followed well-settled law, however, in admitting the BHRHA opinion into evidence. First, we have acknowledged that the BHRHA advisory opinions are general in nature. *See Matter of Exilus*, 18 I&N Dec. 276, 279 (BIA 1982); *see also McLeod* v. *INS*, 802 F.2d 89, 95 n.8 (3d Cir. 1986). The BHRHA advisory opinions are not binding on the immigration judge. Pursuant to 8 C.F.R. § 208.10(b) (1988), however, the immigration judge must make the BHRHA opinion a part of the record, but he may then determine the weight to be accorded that opinion. *See Matter of Exilus, supra*, at 279. The immigration judge here stated that the BHRHA opinion was only "an additional piece of evidence to be considered" in reaching a conclusion with respect to the respondent's asylum application. The immigration judge did not give undue weight to the BHRHA advisory opinion, and his consideration of the opinion as

an additional piece of evidence does not constitute a procedural error.

Finally, the respondent argues that it was error for the immigration judge to admit, and then not consider, articles concerning conditions in El Salvador, affidavits regarding persons similarly situated to the respondent, and a letter from the respondent's mother. The respondent claims that the immigration judge's failure to consider this evidence is "tantamount" to refusing to admit it. A review of the record, however, indicates that the immigration judge did fairly consider the aforementioned evidence. The immigration judge discussed this evidence in his opinion and determined that, although "the information may be true for the articles written," the evidence did not concern the respondent himself. Therefore, the respondent's argument that the immigration judge did not consider this evidence lacks merit. The respondent also contends that this evidence was submitted to show that he was likely to be persecuted. With regard to background evidence concerning general conditions in an alien's native country, however, we have held: "The ultimate test remains . . . whether objective evidence of record is significantly probative of the likelihood of persecution to this particular . . . alien. . . ." *Matter of Exame,* 18 I&N Dec. 303, 305 n.4 (BIA 1982). The background evidence here was admitted and considered, but by itself it does not establish that the respondent may or will be persecuted upon his return to El Salvador.

Because the respondent does not qualify for relief under section 208(a) or section 243(h) of the Act, and because the judge did not commit any procedural errors in denying the respondent's asylum and withholding of deportation applications, the appeal will be dismissed.

ORDER: The appeal is dismissed.

FURTHER ORDER: Pursuant to the immigration judge's order and in accordance with our decision in *Matter of Chouliaris,* 16 I&N Dec. 168 (BIA 1977), the respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.