MATTER OF A–G–

In Deportation Proceedings

A–26851062

*Decided by Board December 28, 1987*

(1) The respondent's government has the same right as other governments to re-
quire military service and to enforce that requirement with reasonable penalties;
and, therefore, the exercise of that sovereign right does not constitute persecution.

(2) Persecution for failure to serve in the military may be established in those rare
cases where a disproportionately severe punishment would result on account of
one of the five grounds enumerated in section 101(a)(42)(A) of the Immigration
and Nationality Act, 8 U.S.C. § 1101(a)(42)(A) (1982), or where the alien, as a result
of military service required by his government, would necessarily be required to
engage in inhuman conduct condemned by the international community as con-
trary to the basic rules of human conduct.

(3) The case of *Matter of Salim*, 18 I&N Dec. 311 (BIA 1982), is distinguishable from
the present case because the claimant in that case was refusing to serve, not in an
army controlled by his own government, but in one which was "under Soviet com-
mand."

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspec-
tion

ON BEHALF OF RESPONDENT:
William Van Wyke, Esquire
2711 Ontario Road, N.W.
Washington, D.C. 20009

ON BEHALF OF SERVICE:
Robert S. Finkelstein
District Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated July 16, 1984, the immigration judge found
the respondent deportable as charged and granted him the only
relief requested, voluntary departure under section 244(e) of the
Immigration and Nationality Act, 8 U.S.C. § 1254(e) (1982). The re-
spondent filed a motion to reopen proceedings to apply for asylum
under section 208(a) of the Act, 8 U.S.C. § 1158(a) (1982). The immi-
gration judge denied that motion on January 22, 1985, and the
Board of Immigration Appeals upheld his decision. In an order

dated January 14, 1986, the United States Court of Appeals for the Fourth Circuit found that the respondent had given sufficient reason for his failure to apply for asylum at the hearing and remanded the record for consideration of additional evidence concerning whether the respondent had made a prima facie case for asylum. On remand, the immigration judge received additional evidence in support of the motion to reopen. Upon consideration of the record, the immigration judge denied the motion to reopen in a decision dated August 29, 1986.[1] The respondent appealed. The Board granted a request for a stay of deportation pending review of the appeal. The appeal will be dismissed.

The respondent is a 30-year-old native and citizen of El Salvador. He entered the United States in March 1982 without having been inspected. He reported that he left El Salvador because he did not want to serve in the army on account of its violent record, but he feared he would be tortured and possibly killed as a sympathizer of the opposition if he refused to serve. He stated that one cousin, a former soldier, was killed in about 1981 by the army when he participated in an anti-government demonstration and that another cousin was drafted by the guerrillas and killed by them around 1980 after he killed a supervisor. A relative of his common-law wife was an officer in the guerrilla army. This man was killed in about 1980. The respondent himself was recruited by a friend to be an *oreja*, or spy, for the government, but he declined. A member of the civilian patrol allegedly threatened him but was executed himself shortly thereafter. The respondent also reported that he was beaten up by soldiers at a roadblock in 1981 and again in 1982. The brother of the respondent's brother-in-law was killed after the respondent had left El Salvador, apparently by a so-called death squad, for providing food to some guerrillas.

The respondent submitted a brief in support of his motion along with numerous reports and newspaper articles regarding the violations of human rights in El Salvador in the period 1980 through 1985 and a new Form I-589 (Request for Asylum in the United States). The respondent has also invoked the Geneva Conventions and Protocols and customary international law in support of his claim that he should not be deported to a country at war.

A motion to reopen will not be granted unless it states new and material facts and is supported by evidentiary material. 8 C.F.R. §§ 3.2, 3.8 (1987); *INS* v. *Wang*, 450 U.S. 139 (1981). A prima facie case of eligibility for the relief sought must be established before a motion to reopen will be granted. *INS* v. *Wang, supra; Matter of*

---

[1] The decision was not transmitted to counsel until November 6, 1986.

*Martinez-Romero*, 18 I&N Dec. 75 (BIA 1981), *aff'd*, *Martinez-Romero* v. *INS*, 692 F.2d 595 (9th Cir. 1982); *Matter of Lam*, 14 I&N Dec. 98 (BIA 1972); *see also Matter of Garcia*, 16 I&N Dec. 653 (BIA 1978); *Matter of Sipus*, 14 I&N Dec. 229 (BIA 1972). An application to reopen is addressed to the sound discretion of the Attorney General. *Balani* v. *INS*, 669 F.2d 1157 (6th Cir. 1982); *accord Israel* v. *INS*, 710 F.2d 601 (9th Cir. 1983), *cert. denied*, 465 U.S. 1068 (1984). Such a motion can be denied on discretionary grounds alone where there are significant reasons for denying reopening. *INS* v. *Rios-Pineda*, 471 U.S. 444 (1985); *INS* v. *Phinpathya*, 464 U.S. 183 (1984); *INS* v. *Wang, supra; INS* v. *Bagamasbad*, 429 U.S. 24 (1976); *Matter of Barocio*, 19 I&N Dec. 255 (BIA 1985); *Matter of Reyes*, 18 I&N Dec. 249 (BIA 1982); *Matter of Rodriguez-Vera*, 17 I&N Dec. 105 (BIA 1979).

An alien who is seeking withholding of deportation from any country must show that his "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h)(1) of the Act, 8 U.S.C. § 1253(h)(1) (1982). In order to make this showing, the alien must establish a "clear probability" of persecution on account of one of the enumerated grounds. *INS* v. *Stevic*, 467 U.S. 407, 413 (1984). This clear probability standard requires a showing that it is more likely than not that an alien would be subject to persecution. *Id.* at 429-30.

In order to establish eligibility for a grant of asylum, an alien must demonstrate that he is a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1982). *See* section 208 of the Act. That definition includes the requirement that an alien demonstrate that he is unwilling or unable to return to his country because of persecution or a "well-founded fear" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The meaning of the term "well-founded fear" has been the subject of considerable controversy and litigation. In *INS* v. *Cardoza-Fonseca*, 480 U.S. 421 (1987), the Court held that the clear probability and well-founded fear standards do in fact differ. The Court found that a probable showing of persecution need not be made in order to establish a well-founded fear of persecution under section 208 of the Act. It specifically declined to attempt a detailed definition of "well-founded fear" or an explanation as to how that term should be applied. Noting that there is "obviously some ambiguity" in the term, the Court left a more concrete definition to the process of case-by-case adjudication. *Id.* at 448. It is clear that to a large degree the mean-

ing of "well-founded fear" can in fact only be determined in the contexts of individual cases.

Although, as noted above, the Supreme Court did not attempt to define "well-founded fear" in *INS* v. *Cardoza-Fonseca, supra,* it offered this guide in dictum in *INS* v. *Stevic, supra,* for the meaning of well-founded fear: "So long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a *reasonable possibility.*" *Id.* at 424–25 (emphasis added). In *Cardoza-Fonseca, supra,* the Court noted the "obvious focus on the individual's subjective beliefs" in assessing whether a fear is well founded. *Id.* at 431.

We agree with and adopt the general approach set forth by the Fifth Circuit; that is, that an applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution. *Guevara Flores* v. *INS,* 786 F.2d 1242 (5th Cir. 1986). As noted by the Second Circuit, this "reasonable person standard appropriately captures the various formulations that have been advanced to explain the well-founded fear test." *Carcamo-Flores* v. *INS,* 805 F.2d 60, 68 (2d Cir. 1986). It is a standard that provides a "common sense" framework for analyzing whether claims of persecution are well founded. Moreover, a reasonable person may well fear persecution even where its likelihood is significantly less than clearly probable. The alien's own testimony may in some cases be the only evidence available, and it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear. *Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987).

The issue before us is whether the respondent has made a prima facie case of at least a well-founded fear of persecution for one of the listed reasons, if he returns to El Salvador. The respondent submitted a considerable body of evidence to the immigration judge on remand, all of a general nature. The respondent argues that he will refuse to serve in the "terrorist" military and that his refusal is based on his political beliefs. He then contends that he would likely suffer severe penalties including death at the hands of the death squads for his refusal, because he would be suspected of anti-government sympathies. He also argues that it would be against his moral values to serve in an army which has engaged in violations of human rights. He alleges that the immigration judge failed to consider his argument that he was not obliged at all to serve in an army which violates human rights. He argues that his position is similar to that of the alien granted asylum in *Matter of Salim,*

18 I&N Dec. 311 (BIA 1982), in that his claim is more than a mere refusal to serve in his country's military.

The respondent has introduced considerable evidence documenting continued violations of human rights by elements supporting the Government of El Salvador. It is important to recall that an alien must support his motion with evidence to show some likelihood of individual persecution to himself or to the class to which he belongs, and that his predicament is appreciably different from the danger facing all the population. *Zepeda-Melendez* v. *INS*, 741 F.2d 285 (9th Cir. 1984). Evidence of a general climate of violence is insufficient. *Mendez-Efrain* v. *INS*, 813 F.2d 279 (9th Cir. 1987); *Chavez* v. *INS*, 723 F.2d 1431 (9th Cir. 1984); *Martinez-Romero* v. *INS*, 692 F.2d 595 (9th Cir. 1982).

We hold to the long-accepted position that it is not persecution for a country to require military service of its citizens. *Kaveh-Haghigy* v. *INS*, 783 F.2d 1321 (9th Cir. 1986) (per curiam); *Villegas* v. *O'Neill* 626 F. Supp. 1241 (S.D. Tex. 1986); *Glavic* v. *Beechie*, 225 F. Supp. 24 (S.D. Tex. 1963), *aff'd*, 340 F.2d 91 (5th Cir. 1964); *Matter of Ugricic*, 14 I&N Dec. 384 (D.D. 1972); *see also Delgado-Corea* v. *INS*, 804 F.2d 261 (4th Cir. 1986); *Rejaie* v. *INS*, 691 F.2d 139 (3d Cir. 1982). Exceptions to this rule may be recognized in those rare cases where a disproportionately severe punishment would result on account of one of the five grounds enumerated in section 101(a)(42)(A) of the Act, or where the alien would necessarily be required to engage in inhuman conduct as a result of military service required by the government. *See* Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* 39-41 (Geneva, 1979). We conclude that the respondent has not brought forward evidence that his refusal to serve would result in disproportionately severe punishment for an impermissible reason or that the activity in which he might be involved has been condemned by the international community as contrary to the basic rules of human conduct.

The respondent contends that his refusal to serve is a valid political opinion and a moral conviction which is supported by international law. He asserts that the actions of the Salvadoran Army violate international law and have been condemned by the international community. Although incidents involving the Salvadoran Army have been reported, which undoubtedly involve the violation of the rights of noncombatants and international law, there is no evidence that these incidents represent the policy of the Salvadoran Government or that the respondent would be required to engage

506

in such actions as a member of the armed forces. The statements of opinion of Americas Watch to the contrary in the record may indeed be the belief of those who represent that organization. Such statements of opinion of private unofficial bodies do not constitute evidence of condemnation by recognized international governmental bodies, which would be necessary at a minimum for us to accept this argument. For an example of a statement of opinion of a recognized international governmental body, see the resolution concerning the status of persons refusing service in military or police forces used to enforce apartheid. G.A. Res. 33/165, 33 U.N. GAOR Supp. (No. 45) at 154, U.N. Doc. A/33/45 (1979). Thus, the Government of El Salvador has the same right as other governments to require military service and to enforce that requirement with reasonable penalties. The case of the claimant in *Matter of Salim, supra,* is distinguishable from that of the respondent because the former was refusing to serve, not in an army controlled by his own government, but in one which was "under Soviet command." *Id.* at 313.

The respondent further asserts that the penalty for failure to serve in the military is not imprisonment after trial but is likely to be torture and death at the hands of the death squads. Although he has presented evidence to show that many have been murdered by so-called death squads for suspected anti-government sympathies, he has not supported the contention that mere failure to serve in the military is the kind of activity which draws the attention of the persons who carry out these killings.

Neither has the respondent shown factual support for the assertion that a period of time spent outside El Salvador produces retaliation for supposed political beliefs. His own family experience shows that individuals on both sides of the war have been killed for a variety of reasons. There is nothing in the respondent's own experience which would lead him to a reasonable fear that he would be in greater danger than any other member of the general population in El Salvador. The incidents in which he was threatened or abused were isolated incidents without further consequences. The respondent's arguments are simply too speculative. Therefore, even under the lesser standard of proof for asylum set by *INS* v. *Cardoza-Fonseca, supra,* the respondent has failed to make a prima facie case of a well-founded fear of persecution. Necessarily, then, he has failed to make a prima facie case of a clear probability of persecution.

The respondent has not cited to any specific provision of international law which would support his claim that he cannot be deported to a country at war. We note only that the United Nations Pro-

tocol Relating to the Status of Refugees, January 31, 1967, [1968] 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268, and the Universal Declaration of Human Rights, G.A. Res. 217, 3 U.N. GAOR, U.N. Doc. 1/777 (1948), are not self-executing and are binding on the United States only as provided by law. *See Haitian Refugee Center, Inc.* v. *Gracey*, 600 F. Supp. 1396 (D.D.C. 1985), *aff'd*, 809 F.2d 794 (D.C. Cir. 1987). Further, the courts of the United States do not generally evaluate the political justifications of the actions of foreign governments. *Kaveh-Haghigy* v. *INS, supra.*

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.