[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 8, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11782
Non-Argument Calendar

_____

BIA Nos. A95-264-702 & A95-264-705

MARIA DE LA CRUZ PINEDO LEAL,
ELIAS ANTONIO GRANDETT PINEDO,
SEBASTIAN DAVID GRANDETT PINEDO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 8, 2007)**

Before ANDERSON, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Maria De La Cruz Pinedo Leal and her two sons, Elias and Sebastian,

applied for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 208.16(c). The immigration judge ("IJ") denied the application, and the Board of Immigration Appeals ("BIA") affirmed. The petitioners, through counsel, seek review.

Petitioners make two arguments on appeal. First, they argue that the IJ erred by denying their application on the basis of an adverse credibility finding. Second, they argue that substantial evidence does not support the IJ's determination to deny their application. They claim that they have a well-founded fear of future persecution by guerillas who have imputed a political opinion to them and wish to harm them or recruit their elder son.

When the BIA expressly adopts the IJ's decision, as in this case, we review both the BIA and the IJ decisions. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review legal determinations de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). We review factual determinations under the substantial evidence test, and "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (internal quotations omitted). We may reverse a denial of asylum under the substantial evidence test

2

"only if the evidence presented by the applicant is so powerful that a reasonable factfinder would have to conclude that the requisite fear of persecution exists." Mazariegos v. Office of the U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (emphasis in original).

To establish eligibility for asylum, an alien must show with specific, credible, and direct evidence either (1) past persecution because of a statutorily-listed factor, or (2) a well-founded fear of future persecution based on a statutorily-listed factor. 8 C.F.R. § 208.13(a), (b). An adverse credibility determination alone may be fatal to an asylum application where the applicant presents only his own testimonial evidence. Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). But unless the IJ makes a "clean determination[] of credibility," we assume that a credibility determination was not dispositive, and that the IJ also relied on the insufficiency of the evidence. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (internal citations and quotations omitted). For example, in Yang, even though the IJ described an applicant's claims as "ridiculous fabrication" and "extremely inconsistent," the IJ did not expressly state whether she found Yang's testimony to be credible. We therefore assumed that the credibility determinations were not dispositive in the IJ's denial of the application, and went on to review whether there was substantial evidence to support the IJ's determination.

3

Here, the IJ said only that "certain inconsistencies do somewhat reduce credibility," and that such inconsistencies "must be considered by the [c]ourt as somewhat of an issue as to credibility." This did not constitute a "clean determination" of credibility. We therefore assume that the IJ relied also on the insufficiency of the petitioners' evidence, and not simply on a failure to believe the petitioners. See Yang, 418 F.3d at 1201.

Accordingly, we turn to the question of whether the IJ's decision to deny the application for asylum was supported by substantial evidence. The Secretary of Homeland Security or the Attorney General has discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish asylum eligibility, the alien must, with specific and credible evidence, establish either (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" of future persecution based on a statutorily listed factor. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. An alien who shows past persecution raises a rebuttable

4

presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). An alien who has not shown past persecution may still be entitled to asylum if he can demonstrate a well-founded fear of a future threat to his life or freedom on the basis of a protected ground. 8 C.F.R. §§ 208.13(b)(2). To establish a "well-founded fear," an applicant must show that he has a fear of persecution in his home country and that "there is a reasonable possibility of suffering such persecution if he or she were to return to that country." 8 C.F.R. § 208.13(b)(2)(i). An asylum applicant claiming persecution on the basis of political opinion must show (1) that he has a political opinion, and (2) that he was either persecuted for that opinion, or has a well-founded fear of being persecuted because of that opinion. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 816 (1992).

Petitioners argue that substantial evidence did not support the IJ's denial of their application for asylum. They first claim that they were persecuted by the Revolutionary Armed Forces of Colombia (FARC). The petitioners testified that a cousin tried to recruit the elder son, Elias, into the FARC. When Elias refused to join, Elias's father Roberto confronted the cousin. As a consequence, the cousin and others threatened the petitioners on several occasions.

Substantial evidence supported the IJ's determination that this did not suffice to show past persecution on account of a statutorily listed factor. The petitioners failed to show that the alleged persecution was on account of a

5

statutorily listed factor. They did not present any evidence that the threats or harassment were based on race, religion, nationality, membership in a particular social group, or political opinion. Rather, the evidence tended to show that petitioners were harassed because FARC wanted Elias to join. The Supreme Court has recognized that guerilla recruitment efforts alone are not sufficient to show past persecution, because "a person. . . might resist recruitment for a variety of reasons–fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." Elias-Zacarias, 502 U.S. at 482, 112 S. Ct. at 815. Thus, in addition to guerilla recruitment or harassment, a petitioner must show "that the guerillas will persecute him because of [a] political opinion, rather than because of his refusal to fight with them." Id. at 483, 112 S. Ct. at 816 (emphasis in original). Petitioners' evidence related only to the fact of attempted guerilla recruitment and the corresponding threats. Thus, on the whole record, the IJ's conclusion that they did not suffer past persecution on the basis of a statutorily listed factor was supported by substantial evidence.

Having failed to show past persecution, petitioners next argue that they have a well-founded fear of future persecution. This claim fails for the same reason: even if they could show a fear of future persecution, they have not presented evidence showing that their fear is linked to race, political opinion, membership in a particular social group, religion, or nationality. "[E]vidence that either is

6

consistent with acts of private violence or the petitioner's failure to cooperate with guerillas. . . does not constitute evidence of persecution based on a statutorily protected ground." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006).

Petitioners attempt to satisfy the statutory definition by claiming that Elias belongs to a "particular social group": "young men recruited by unlawful guerilla factions." But the BIA has rejected the assertion that young men in certain countries who are targeted by guerilla recruiters constitute a particular social group. See Matter of Vigil, 19 I.&N. Dec. 572, 574 (BIA 1988). Moreover, we have previously upheld the BIA's interpretation of "particular social group" as requiring "a common immutable characteristic that is fundamental to its members' individual identities or consciences." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196-7 (11th Cir. 2006). A group composed of all young men in Colombia recruited by guerilla factions is far too broad and ill-defined to meet that definition. Because petitioners failed to provide a link to one of the grounds enumerated in the statute, the IJ did not err in dismissing their asylum application.

Petitioners finally claim that they supplied the requisite nexus to the statutory categories by way of a theory of imputed political opinion. We have held that "[a]n imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA." Al Najjar, 257 F.3d at 1289 (internal quotations omitted).

7

"An asylum applicant may prevail on a theory of imputed political opinion if he shows that the persecutor falsely attributed an opinion to him, and then persecuted him because of that mistaken belief about his views." Id. (alterations and internal quotations omitted). But in the context of forcible recruitment, "the mere existence of a generalized 'political' motive underlying the guerrillas' forced recruitment is inadequate to establish (and, indeed, goes far to refute) the proposition that [the petitioner] fears persecution on account of political opinion, as [INA] § 101(a)(42) requires." Elias-Zacarias, 502 U.S. at 482, 112 S.Ct. at 816 (emphasis in original).

Petitioners claim that the guerillas will impute a political opinion to them on the basis of their resistance to the efforts to recruit Elias. But they have not specified the content of this imputed political opinion, and thus cannot show why the guerillas might want to persecute them for it. Rather, their evidence only tends to show that the guerillas harassed them, and might continue to harass them, because they refused to let Elias join the FARC: not because FARC thought they disagreed with its political views. To the extent that petitioners fear the guerillas still wish to recruit Elias, this tends to refute the notion that they wish to persecute him for having political beliefs different from theirs. See Elias-Zacarias, 502 U.S. at 482, 112 S.Ct. at 816 (noting that guerillas' forced recruitment "goes far to refute" a claim of persecution on the basis of political opinion). Alluding to the political motives that the guerilla movement may possess is not enough to carry

8

petitioners' burden. See id. at 482, 112 S. Ct. at 816 ("The ordinary meaning of the phrase 'persecution on account of. . . political opinion' in § 101(a)(42) is persecution on account of the victim's political opinion, not the persecutor's"). Petitioners must show that the guerillas would persecute them on the basis of their political beliefs, and they have presented no evidence to show that they have a well-founded fear of such persecution.

Petitioners also failed to show that their fear of future persecution is well-founded. We have previously found it significant that a petitioner's "son and his parents have remained unharmed in the region of Colombia where [petitioner] allegedly was threatened." Ruiz, 440 F.3d at 1259. Elias's father Roberto, who confronted the cousin and received many of the threatening phone calls, remains in Colombia and has not been harmed. Substantial evidence therefore supported the IJ's determination, both because petitioners failed to show that their fear was well-founded and because their fear was not linked to a statutorily listed ground.

Finally, even if petitioners could have established a well-founded fear of persecution, their claim would still fail because they produced no evidence showing they could not avoid persecution by moving elsewhere in Colombia. "After establishing a 'well-founded fear' of persecution, the alien must establish the persecution cannot be avoided by relocating within the subject country." Sepulveda, 401 F.3d at 1231. Petitioners would have to show not only that guerilla

9

activity is widespread in Colombia: they would have to show that guerillas who would specifically target them exist wherever they might move in Colombia. Id. at 1232 n.7. We previously upheld the denial of an application where a petitioner claiming persecution by guerillas "was a fairly low-level soldier who does not appear to have played an especially notorious role in the war" because "[w]e cannot say on this record that he is a high-profile target, or that guerillas outside the vicinity of his home are likely to identify and pursue him." Mazariegos, 241 F.3d at 1327. Similarly, as the IJ found, the petitioners did not attempt to relocate before departing Colombia, and in fact, Elias's father Roberto still lives there. Petitioners thus presented no evidence to show that they would be persecuted if they relocated within Colombia, and for this reason too the IJ did not err in dismissing their application for asylum.

Petitioners also claim that they are entitled to withholding of removal and relief under the CAT. Withholding of removal, unlike asylum, is mandatory. To qualify for withholding of removal under the INA, an alien must show that if returned to his country, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). Generally, where an alien fails to meet the "well-founded fear" standard for establishing asylum eligibility, the alien cannot establish the higher burden for withholding of removal. Al Najjar,

257 F.3d at 1292-93. Similarly, the burden on the alien seeking CAT relief is higher than the burden imposed on the asylum seeker. Id. at 1303. To show an entitlement to CAT relief, the petitioner must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Id. Because substantial evidence supported the IJ's determination that petitioners were not eligible for asylum, substantial evidence also supported the IJ's determination that petitioners are not entitled to withholding of removal or relief under the CAT. Accordingly, we deny the petition for review.

**DENIED.**