**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ARSHAK DAVTYAN,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 10-9534
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Arshak Davtyan, a citizen of Armenia, petitions for review of an order of

the Board of Immigration Appeals (BIA) affirming the denial of his application

for restriction on removal and relief under the Convention Against Torture.

Because the agency's decision does not lend itself to meaningful review, we

reverse and remand for further proceedings.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

As an adolescent, Mr. Davtyan converted from the Armenian Apostolic Church, the national church of Armenia, and joined the Jehovah's Witnesses, a minority religious community. While a university student, he was present at a neighborhood fight during which a young man died of a knife wound. The police arrived on the scene and arrested Mr. Davtyan and others. At the station, the police searched Mr. Davtyan's bag and found Jehovah's Witness literature. Mr. Davtyan thought the police felt free to blame him for the fight "because of the attitude towards the Jehovah's Witnesses in society." Admin. R. at 139. A government bureaucrat, who was also the father of one of the combatants, tried to make Mr. Davtyan confess that he initiated the fight by advocating for his faith. When Mr. Davtyan refused to sign an admission, the bureaucrat punched him in the face and threatened to have him expelled from the university. Also, a police officer hit him with a club. He was then released from custody.

Shortly afterwards, Mr. Davtyan was expelled from the university. The expulsion meant that he was no longer deferred from service in Armenia's universal conscription system. But Jehovah Witnesses are conscientious objectors and it is "against their religion to serve in the military or . . . to swear or salute to a flag." Admin. R. at 144.

Fortuitously for Mr. Davtyan, he had already applied for a summer work-and-travel program in the United States. After the fight incident, he

decided to participate in the program, obtained a temporary visitor's visa, and entered the United States. In Armenia, the police appeared at Mr. Davtyan's home, warning his mother that he must return at the end of the program or she herself would be jailed. His mother, who is also a Jehovah's Witness, left for Russia.

Mr. Davtyan remained in the United States, overstaying his visa. He graduated from college, received a master's degree, and became a certified public accountant. Some three years after he entered the United States, he was placed in removal proceedings. He admitted removability and applied for asylum, restriction on removal, and deferral of removal under the Convention against Torture (CAT).

In immigration proceedings, Mr. Davtyan argued that he had suffered past persecution, particularly with regard to the fight incident, and was likely to suffer future persecution in connection with his leaving the country and his refusal to comply with Armenia's universal conscription laws. The Immigration Judge (IJ) found that Mr. Davtyan's account of events in Armenia was credible, inherently plausible, and consistent with the Department of State Reports describing Armenian concerning human-rights practices and religious freedom. Nevertheless, he concluded that Mr. Davtyan had not demonstrated either past persecution or the likelihood of future persecution or torture in Armenia.

Therefore, the IJ denied restriction on removal and CAT relief. In a brief, one-member order the BIA agreed with the IJ and dismissed Mr. Davtyan's appeal.[1]

## II.

In his petition for review, Mr. Davtyan challenges the BIA's denial of restriction on removal and CAT relief. To show entitlement to restriction on removal, the alien "bears the burden of showing a clear probability of persecution attributable to race, religion, nationality, membership in a particular social group, or political opinion." *Sviridov v. Ashcroft*, 358 F.3d 722, 729 (10th Cir. 2004) (internal quotation marks omitted).[2] Because motive is a "critical" element, the alien must provide "direct or circumstantial" evidence of intent to persecute "*because of*" one of the listed grounds. *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

This circuit considers the "determination whether an alien has demonstrated persecution [to be] a question of fact." *Ritonga v. Holder,* ___ F.3d. ___, No. 09-9539, 2011 WL 258380, *2 (10th Cir. Jan. 28, 2011) (internal quotation

---

[1] The agency also decided that Mr. Davtyan's asylum application was untimely, in that it was filed well after the statutory one-year limit and did not demonstrate either changed or extraordinary circumstances. *See* 8 U.S.C. § 1158(a)(2). In his petition for review, Mr. Davtyan does not challenge this determination.

[2] Protections of the CAT are available if the alien demonstrates "that it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official" upon removal." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (internal quotation marks omitted).

-4-

marks omitted). "Agency findings of fact are reviewed under the substantial evidence standard. Under this standard of review, agency findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citations and internal quotation marks omitted).

"Although always deferential to agency fact-finding, we must ensure that BIA conclusions are sufficiently supported by the available evidence." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* (internal quotation marks and alteration omitted).

Additionally, "[t]he scope of our review is governed by the form of the BIA decision. Where the BIA issues its own opinion dismissing the appeal in a single-member decision . . . , the order constitutes the final order of removal" for our review. *Ritonga*, 2011 WL 258380 at *1 (internal quotation marks omitted). But "we also may consult the IJ's explanation," especially if the BIA "incorporates by reference the IJ's rationale" or "repeats a condensed version of [the IJ's] reasons while also relying on the IJ's more complete discussion." *Id.* (internal quotation marks omitted). We are "confined to the reasoning given by the agency, and we will not independently search the record for alternative bases to affirm." *Id.* (internal quotation marks and alterations omitted). "[I]f our review is to have any meaning, it must be based on the Board's own articulation

of its reasons for denying relief, not on our assumptions about what the Board considered and decided." *Turri v. INS*, 997 F.2d 1306, 1310 (10th Cir. 1993) (unrelated jurisdictional determination superseded by statute, as stated in *Escalera v. INS*, 222 F,3d 753, 756 (10th Cir. 2000)) (quotation omitted)

III.

Mr. Davtyan contests the substantiality of the evidence underlying the BIA's determination that he failed to demonstrate the probability of persecution upon his return to Armenia. Primarily, he claims that he will be persecuted for refusing to comply with Armenia's compulsory conscription laws. It is against his religious beliefs to serve either in the military or alternative labor service, which is administered by the military and is "still . . . something [he] can't do." Admin. R. at 150. The *State Department International Religious Freedom Report 2007* corroborates Mr. Davtyan's testimony on this issue. It notes faith leaders' statements that Jehovah's Witnesses imprisoned for refusal to serve in the military were offered the alternate service, but "all refused." *Id.* at 223. And the *Country Report on Human Rights Practices in Armenia 2007* states that "since 2005 there have been no applications for alternative service." *Id.* at 212.

Concerning punishment for failure to serve, Mr. Davtyan testified that his friend, another Jehovah's Witness, was imprisoned, beaten, and denied adequate food. The friend eventually died in jail. Prison conditions are "poor and threaten[] inmates' health." *Id.* at 205 (*Country Rep't on Human Rights*

*Practices).* "Chronic problems" include overcrowded cells, lack of basic hygiene supplies, high risk of contracting tuberculosis, poor food quality, denial of visitor privileges, medical neglect, and some physical abuse. *Id.* And the *International Religious Freedom Report* includes Jehovah Witnesses' complaints "that the courts handed down tougher sentences for evasion of alternative labor service." *Id.* at 223.

Faced with this evidence, the BIA first described the legal framework for its analysis. "[T]he exercise of th[e] sovereign right" to require military service "does not constitute persecution." Admin. R. at 3-4 (citing *In re A-G-*, 19 I. & N. Dec. 502, 506 (BIA 1987). "Persecution for failure to serve in the military may be established only in those rare cases where a disproportionately severe punishment would result in account of one of the five grounds enumerated" in the Immigration and Naturalization Act. Admin. R. at 4 (citing *A-G-*, 19 I.&N. Dec. at 506). The BIA's decision relied on two additional cases with relevant holdings, but it omitted passages applicable to claims of disproportionate punishment. Admin. R. at 4. *See In re Canas*, 19 I. & N. Dec. 697, 709 (BIA 1988) (stating that an alien may demonstrate persecution by showing "the Government's conscription laws are carried out in a manner which punishes a person because of his particular religious beliefs or his religious affiliation"); *In re Vigil,* 19 I. & N. Dec. 572, 579 (BIA 1988) (stating "an alien who has refused to perform military service could qualify as a 'refugee' by showing that, if

returned to a certain country, he might suffer disproportionate punishment for his military offense 'on account of' one of the five enumerated grounds").

Apparently applying the standard described in its case law, the BIA made a summary finding that the IJ "properly concluded that the respondent did not satisfy his burden of demonstrating eligibility for . . . withholding of removal or protection under the Convention Against Torture." Admin. R. at 4. In a statement unsupported by legal authority, the BIA also commented: "Although the respondent may object to some aspects of [the] alternative service, its existence further undermines his argument of persecution arising from his religious belief." *Id.*

Because the BIA's opinion is somewhat conclusory, we look to the IJ's more detailed discussion to illuminate the agency's decision. At this point, judicial review for substantial evidence becomes problematic. The IJ found "that the respondent may probably face arrest upon his return to Armenia and will probably be required to, in some way, comply with his failure to report for duty in the military or the alternative program. . . ." Admin. R. at 48. He also found "*some* evidence in the record that Jehovah's Witnesses may be sentenced to a longer term of imprisonment than others who have failed to comply with the conscription laws." *Id.* (emphasis added).

These findings appear to recognize some circumstantial evidence of intent to persecute on religious grounds, but the IJ followed them with contradictory and

-8-

perhaps mis-transcribed observations. "[T]here is *no* evidence in the record that this is made with the intent of persecuting [Mr. Davtyan] for his religious belief." *Id.* at 48-49 (emphasis added). "There's *no* evidence in the record that the respondent would just serve a disproportionate term or that the term of or the punishment would be sever[e]." *Id*. at 49 (emphasis added). Though "there is *some* evidence that the Court[]s and some judges in Armenia may sentence those who belong to the Jehovah Witness religion to a term longer than others who are convicted of that crime in Armenia," the IJ found "*no* evidence in the Court as to what, if any, the disproportionate punishment may be [meted] out to the conscientious objector as those who fail to serve in the military of Armenia because they are members of the Jehovah's Witnesses and others who may also find military services objectionable." *Id*. at 49-50 (emphasis added).

These rather baffling findings are accompanied by an impenetrable one: "there is no evidence that the Armenia courts or upon conviction of their failure to comply with conscription laws are sentenced to serve a prison sentence for just illegal or inappropriate under the law of Armenia." *Id*. at 48. A final finding is "that the respondent's fear is not of returning to Armenia, it involves the future service in the Armenian military or paying punishment for not complying with the conscription laws of Armenia." *Id*. at 52.

When this court consults the IJ's decision, the IJ's factual findings must be conducive to meaningful review. *See Razkane v. Holder*, 562 F.3d 1283, 1288

(10th Cir. 2009) (determining that the IJ's stereotypical assumptions were "unhinged from the prerequisite of substantial evidence" and would "inevitably lead to unpredictable, inconsistent, and unreviewable results"); *Wiransane v. Ashcroft*, 366 F.3d 889, 898 (10th Cir. 2004) (stating that this court "will reject an adverse credibility finding for which an IJ gives virtually no reasoning").

In addressing Mr. Davtyan's case, the BIA and the IJ may well have had cogent reasons for finding that sentencing disparities between Jehovah's Witnesses and other conscientious objectors do not amount to a probability of persecution upon his return to Armenia. But the agency's failure to articulate these reasons, precludes our review.[3] We are constrained to remand for additional proceedings. In light of our decision to remand for more coherent findings on the persecution issue, we determine it unnecessary at this time to address the argument that the agency's denial of Mr. Davtyan's CAT claim was not supported by substantial evidence.

---

[3] We note also the Supreme Court's general holding that "it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Com'r of Internal Revenue*, 490 U.S. 680, 699 (1989). On the present record, it is undisputed that Jehovah's Witnesses and Mr. Davtyan have religious objections to the alternative noncombat service. Thus, the BIA's discounting of these objections, without any citation to legal authority, appears anomalous.

IV.

The petition for review is GRANTED, and the case is remanded for additional proceedings consistent with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge