Goce GJEROSKI, Petitioner

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–3666.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 7, 2009.

Opinion filed: Oct. 9, 2009.

*Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786–87 (3d Cir.1994).

John D. Perez, Esq., Perez, Perez & Perez, Newark, NJ, for Petitioner.

Katharine Clark, Esq., Richard M. Evans, Esq., Brooke M. Maurer, Esq., Barry J. Pettinato, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, STAPLETON and COWEN, Circuit Judges.

## OPINION

PER CURIAM.

Petitioner Goce Gjeroski, a native and citizen of Macedonia, and an Orthodox Christian, A.R. 189, entered the United States without inspection at Laredo, Texas, and was served with a Notice to Appear on December 4, 2002. The NTA charged that he was removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. The allegations were conceded, and, on October 21, 2003, Gjeroski filed an application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18. Gjeroski claimed a fear of persecution because he deserted from the Macedonian Army, and he claimed that he would be tortured in prison by the police.

After serving nine months in the Macedonian Army in 1996, Gjeroski was again called into service from May 29, 2001 until June 29, 2001 in the war against Albanian insurgents, according to his asylum application. He served on the front lines in June of 2001. Evidently, he was discharged or released from this service, but, in November of 2001, he again was called into military service, and he learned that he would be sent back into combat. Gjeroski went into hiding, and, ultimately, he fled Macedonia because he did not support the war and did not wish to return to the front lines.

At his merits hearing on September 7, 2004, Gjeroski testified that, although he did not see combat in 1996, he did see it in June of 2001. However, he gave no de-

tails of that experience in his testimony (or, for that matter, in his asylum application). Gjeroski testified that he belonged to the Social Democratic Party, but his party affiliation was not the reason for his objection to further military service. He testified that, if he returns to Macedonia, he will be imprisoned for the rest of his life as a deserter. Gjeroski also submitted into evidence the 2002 U.S. State Department Country Report on Human Rights Practices for Macedonia, the 2003 Human Rights Watch World Report for Macedonia, the 2003 Amnesty International Report on Macedonia, and an Amnesty International Article, titled *"Continuing Failure by the Macedonian authorities to confront police ill-treatment and torture,"* dated June 1, 2003.

The Immigration Judge denied Gjeroski's applications for relief and protection and ordered him removed to Macedonia. The IJ reasoned that, under Board of Immigration Appeals precedent, conscription into a country's military is not by itself persecution unless the conscription requires a person to engage in inhuman conduct while part of the military. Relying upon *Matter of A–G–,* 19 I. & N. Dec. 502 (BIA 1987), and *Matter of Canas,* 19 I. & N. Dec. 697, 709 (BIA 1988), among other Board decisions, the IJ concluded that Gjeroski failed to show that he had been required to engage in inhuman conduct, or that military deserters in general are a group protected under the INA. The State Department report indicated that certain abuses had occurred in areas controlled by both the Macedonian police and military, but the report did not indicate who actually was responsible for the abuses, and there were no specific human rights abuses attributed to the Macedonian Army. Furthermore, Gjeroski's own testimony, which lacked any detail about his month in combat, was not persuasive proof of his claim. The IJ denied Gjeroski's applica-

tion for CAT protection, because the State Department report indicated only generally that the Macedonian police sometimes tortured and abused prisoners.

Gjeroski appealed the IJ's decision, essentially contending that his evidence of a well-founded fear of persecution was sufficient and that his torture claim had merit. On December 28, 2005, the Board affirmed without opinion pursuant to 8 C.F.R. § 1003.1(e)(4). Gjeroski did not file a timely petition for review. Instead, on May 23, 2006, he filed a motion to recalendar and reissue the Board's December 28, 2005 decision, which the Board denied on June 20, 2006. Gjeroski timely petitioned for review of that decision (at C.A. No. 06–3466), and we granted the petition and remanded. Following remand, on July 30, 2008, the Board reissued its December 28, 2005 decision, and the instant timely petition for review followed.

We will deny the petition for review. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). When the Board summarily affirms, the decision we review is that of the IJ's. *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir.2003) (en banc). Whether an applicant for asylum has demonstrated past persecution or a well-founded fear of persecution is a factual question. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002). Factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Immigration & Naturalization Serv. v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Under this deferential standard of review, we must uphold the determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An applicant for asylum has the burden of establishing that he is unable or unwilling to return to his home country "because

of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); *see* 8 *C.F.R.* § 1208.13(a); *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir.2001). The alien bears the burden of proof. *Id.* To establish eligibility on the basis of past persecution, an alien must show that he suffered some harm rising to the level of persecution on account of a statutorily protected ground. *Gao*, 299 F.3d at 272. An alien who establishes past persecution enjoys a presumption of a well-founded fear of future persecution, *Lukwago v. Ashcroft*, 329 F.3d 157, 174 (3d Cir.2003), but, if the alien cannot show past persecution, he may still establish a well-founded fear of future persecution by demonstrating a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question, *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir.2003).

■ We conclude that substantial evidence supports the IJ's determination that Gjeroski did not make the required showing for asylum relief. As a threshold matter, we note the Seventh Circuit Court of Appeals's description of the conflict at issue here:

In early 2001, a violent conflict broke out between an ethnic Albanian insurgent group known as the National Liberation Army (NLA) and Macedonian military and police forces. The conflict began in February 2001 when the NLA launched an insurgency near the Kosovo border; it spread through northern and western Macedonia, often proceeding village by village. The conflict peaked during late spring and early summer before a peace agreement was reached in the fall. Allegations of serious human rights abuses have been leveled on both

sides of the conflict. Human rights groups report that villages under NLA control were shelled indiscriminately by the Macedonian military. The government denies those charges and accuses the NLA of using civilian populations as human shields. In either case, it is clear that innocent civilians were caught in the cross-fire. Over 170,000 people were displaced from their homes by the fighting. Many never returned.

*Zeqiri v. Mukasey,* 529 F.3d 364, 367 (7th Cir.2008).

At his merits hearing, Gjeroski testified that he deserted the Macedonian Army because he believed that fighting Albanians was not correct and he did not want to kill people. He further testified that, if he were removed to Macedonia, he would face lengthy imprisonment—possibly life in prison—for deserting the military. However, as the IJ concluded, "military service itself is not persecution, nor are reasonable penalties for failure to serve." *Ilchuk v. Att'y Gen. of U.S.,* 434 F.3d 618, 625 (3d Cir.2006) (citing *Lukwago v. Ashcroft,* 329 F.3d 157, 168–69 (3d Cir.2003)). Prosecution for desertion generally does not constitute persecution unless it targets the individual on the basis of a protected category. *See id.* at 626; *cf. Chang v. Immigration & Naturalization Serv.,* 119 F.3d 1055, 1060 (3d Cir.1997) (fear of prosecution for violations of fairly administered laws does not itself qualify one as a refugee).

A sovereign nation has the right to enforce its laws of conscription. *See Lukwago,* 329 F.3d at 168. Exceptions to the general rule arise only in "rare cases" where, on account of one of the five statutorily protected grounds, an alien faces disproportionately severe punishment for desertion. *Kibinda v. Att'y Gen. of U.S.,* 477 F.3d 113, 121 (3d Cir.2007) (citing *Matter of A–G–,* 19 I. & N. Dec. at 502). Overt discrimination in the enforcement of

conscription laws may reflect a government's intent to persecute members of a given religion. *See Matter of Canas,* 19 I. & N. Dec. at 709. Gjeroski did not allege that his race, religion, nationality, political opinion, or membership in a particular social group would cause him to face punishment out of proportion to that encountered by other military deserters, and he did not claim or show that his Christianity was the basis for his fear of prosecution and disproportionate punishment. He did not even establish that he would be prosecuted for desertion, let alone establish that he would be disproportionately punished on the basis of a protected ground.

■ Relief also is available where the alien can show that he "would be associated with a military whose acts are condemned by the international community as contrary to the basic rules of human conduct." *See Kibinda,* 477 F.3d at 121–22. However, substantial evidence supports the IJ's conclusion that Gjeroski did not establish that the Macedonian Army is a military whose methods contravene the basic rules of human conduct. *Id.* Gjeroski presented no evidence that he had been required to engage in inhuman acts, or "ethnic cleansing," when he served on the front lines as a member of the Macedonian military. *See generally Mojsilovic v. Immigration & Naturalization Serv.,* 156 F.3d 743, 747 (7th Cir.1998) (persecution established where type of military action is condemned by the international community as contrary to basic rules of human conduct). An alien seeking asylum on the basis of such allegations must present objective evidence that he was, or would be, forced to participate in human rights abuses, and may not obtain relief based on "speculative fear[s]" of having to commit such abuses. *Kibinda,* 477 F.3d at 122. In 2001, Gjeroski was in a combat zone fighting against Albanians, but he did not

claim to have witnessed, or been pressured to commit, inhuman acts. Furthermore, relying on a State Department Country Report for Macedonia, the IJ properly concluded that the Macedonian Army had not been accused of committing atrocities.

Accordingly, because Gjeroski failed to show a well-founded fear of persecution for asylum purposes, it follows that he failed to meet the higher standard of demonstrating a clear probability of persecution for the purposes of withholding of removal. *Immigration & Naturalization Serv. v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).

■ The IJ also determined, based on the Country Report, that the Macedonian police sometimes had engaged in torture of criminal suspects and prisoners, but the IJ concluded this generalized evidence did not establish Gjeroski's claim that it was more likely than not that *he* would be tortured. 8 C.F.R. §§ 1208.16, 1208.18. We conclude, after reviewing the record, that substantial evidence supports this conclusion as well. Gjeroski testified that, if he returned to Macedonia, he would be imprisoned, possibly for life, but, even assuming the truth of this assertion, the Country Report, which indicated that the Macedonian police sometimes tortured and abused prisoners, did not suggest that the police were more likely than not to torture military deserters, or Macedonian citizens, who, like Gjeroski, are not ethnically Albanian. The Amnesty International articles submitted describe serious police abuse of certain ethnic Albanians, but, again, the articles do not suggest that the police were more likely than not to torture military deserters, or Macedonian citizens, who, like Gjeroski, are not ethnically Albanian. Therefore, Gjeroski did not meet his burden to show a likelihood of torture in Macedonia, and the IJ properly denied his application for CAT protection.

■ Last, Gjeroski has argued in his brief on appeal that the Board abused its discretion by affirming, without opinion, the decision of the IJ. The streamlining regulations of the INA "do not violate the Due Process Clause of the Constitution." *Dia*, 353 F.3d at 238. Here, the issues on appeal were squarely controlled by existing Board precedent, holding that forced conscription and punishment for desertion are not statutorily protected grounds for asylum or withholding of removal except in certain situations not alleged here, *see Matter of A–G–*, 19 I. & N. Dec. at 502 ("Persecution for failure to serve in the military may be established in those rare cases where a disproportionately severe punishment would result on account of one of the five grounds enumerated in section 101(a)(42)(A) of the [INA], or where the alien, as a result of military service required by his government, would necessarily be required to engage in inhuman conduct condemned by the international community as contrary to the basic rules of human conduct."); *Matter of Canas*, 19 I. & N. Dec. at 697 (same, with emphasis on religious objections to service). Moreover, the factual assertions supporting Gjeroski's applications for relief were straightforward and not in dispute. We find that the Board properly exercised its judicial review function in Gjeroski's case and was not required to supplement, modify, restate, or correct the IJ's reasoning. 8 C.F.R. § 1003.1(e)(4)(i). Gjeroski's due process right to an individualized determination was accorded to him by the IJ, who issued a reasoned decision. *See Dia*, 353 F.3d at 240.

For the foregoing reasons, we will deny the petition for review.