[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 14-11540
Non-Argument Calendar

————————————————

Agency No. A087-348-530


VYACHESLAV MARK BRATSLAVSKI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(December 23, 2014)

Before HULL, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Vyacheslav Mark Bratslavski petitions for review of the Board of Immigration Appeals's ("BIA") final order (1) vacating the Immigration Judge's ("IJ") decision to the extent the IJ granted Bratslavski asylum, and (2) ordering Bratslavski removed to Israel.  Bratslavski, a native of Uzbekistan and citizen of Israel, claimed past persecution and a well-founded fear of future persecution based on his refusal to serve in the Israeli military as a conscientious objector.  The BIA concluded that, based on the IJ's factual findings, Bratslavski was ineligible for asylum as a matter of law.  After review, we deny Bratslavski's petition.[1]

## I.  FACTUAL BACKGROUND

The facts supporting Bratslavski's persecution claims are not in dispute. According to Bratslavski's credible hearing testimony and other record evidence, Israeli citizens who refuse to comply with Israel's compulsory military service law are subject to prosecution and incarceration.  Although there is a conscientious objection exemption from military service, Israeli citizens rarely receive this exemption because the Israeli military uses a very narrow definition of conscientious objection.  Alternatively, an Israeli citizen can receive a "Profile 21"

---

[1]Where, as here, the BIA issues its own opinion and does not adopt the IJ's decision, we review the BIA's opinion.  Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007).  To the extent the decision was a legal determination, our review is de novo.  Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006).  Factual determinations are reviewed for substantial evidence, and we must affirm the BIA's ultimate factual determination of asylum ineligibility "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation marks omitted).

2

exemption by being deemed to have physical or psychological disabilities that render him unfit for military service. Israeli citizens who refuse military service are subject to cycles of short (approximately one-month) prison terms until they either agree to enlist or opt for a psychiatric exemption under Profile 21.

Bratslavski is a follower of Tolstoy's philosophy of non-violence. In October 1999, while a college student in Israel, Bratslavski received notice from the Israeli military for an interview, at which he was told he needed to enlist. When Bratslavski refused, he immediately was arrested and taken to a military prison, where he was housed with other conscientious objectors.

That evening, a three-officer panel conducted a hearing and advised Bratslavski he could either enlist or remain in prison. Based on his moral principles, Bratslavski refused to enlist and was sentenced to a three-month prison term. Bratslavski was told that at the end of his sentence, he would be called before the panel again and asked to enlist. If he refused, Bratslavski would receive another three-month sentence, and that this cycle could go on indefinitely.

According to the military prison's rules, after Bratslavski refused food and water for three meals, he was administered an IV and placed in solitary confinement with a suicide watch. Two days later, Bratslavski used a piece of broken glass to attempt suicide by cutting his arm. Bratslavski's wound was treated and he was placed back in solitary confinement. Two days later,

Bratslavski found more broken glass and again tried to cut himself.  After his second suicide attempt, Bratslavski received a certificate of mental disability and Profile 21 exemption and was released.

During his 21-day incarceration, Bratslavski was never physically harmed. He and the other prisoners were subjected to moral pressure and intimidation tactics, such as being lined up and yelled at.

After his release, Bratslavski returned to the university, but did not graduate due to financial reasons.  Bratslavski claims his Profile 21 exemption made it harder for him to find work in Israel.  The background material in the record indicates that Israeli citizens who are exempt from military service cannot obtain certain "security sector" jobs that make up a large portion of Israel's job market. Additionally, although it is illegal, some private employers still consider an employee's military service record.  Because an Israeli citizen exempt from service under Profile 21 receives an exemption certification instead of a discharge certification, private employers can glean an employee's military service record. As a result, Israeli citizens who receive a Profile 21 exemption can find work in Israel, but their employment options are more limited.

In Bratslavski's case, he initially had trouble finding employment and worked odd jobs, but eventually obtained a position as a sales agent.  In June 2003, Bratslavski was denied a promotion to sales manager after his interviewer learned

4

he was a conscientious objector.  Bratslavski looked for another managerial job, but, when he could not find one, left Israel for the United States in November 2003.

In January 2004, Bratslavski returned to Israel when a friend offered him a managerial job in a grocery store.  Bratslavski worked in this position until August 2005, when the grocery store burned down and he returned to the United States on a tourist visa.

Bratslavski overstayed his visa.  The Department of Homeland Security issued a Notice to Appear charging Bratslavski with removability pursuant to the Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for having remained in the United States beyond his authorization.  Bratzlavski does not dispute his removability as charged, but contends that the BIA erred in denying him asylum.

## II.  DISCUSSION

To establish eligibility for asylum, an application must show either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group or political opinion. INA § 101(a)(42); 8 U.S.C. § 1101(a)(42)(A); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005).  To show persecution based on the enforcement of a country's compulsory military service law, the applicant must

5

prove either: (1) that he was "disproportionately punished for refusing to serve" on account of a protected ground; or (2) that he was "forced to join an internationally condemned military." See Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1346 (11th Cir. 2008); Matter of A-G-, 19 I. & N. Dec. 502, 506 (BIA 1987). Bratslavski does not contend that the Israeli military is internationally condemned. Further, although Bratslavski was imprisoned after he refused to enlist in the Israeli military, he did not present any evidence that he was punished any differently than other non-exempt Israeli citizens who refused to serve.

As the BIA explained, Bratslavski did not contend, and the IJ did not find, that Bratslavski was punished more severely than other Israeli citizens who refused to perform military service for reasons other than religious or political pacifism. To the contrary, the record indicates that Bratslavski was afforded the typical due process for an Israeli military court and was subjected to the usual penalties for refusing to serve in the Israeli military.[2] Bratslavski also was treated according to the military prison's rules when he was placed in solitary confinement on an IV after he refused food and water, he received medical care after his first suicide attempt, and he was released from military prison upon receiving his Profile 21

---

[2]Bratslavski, a native Russian speaker with limited understanding of Hebrew, complains that he was not provided an interpreter or an attorney during the hearing. The record indicates, however, that Israeli military court proceedings are conducted in Hebrew (with Arabic translation), do not provide all of the procedural rights of civil criminal courts, may hear secret evidence, and do not automatically provide free legal counsel. Further, Bratslavski did not submit any evidence that his hearing differed from the hearings of other Israeli citizens who refused to serve.

exemption.  In fact, Bratslavski was detained for only three weeks and was never physically harmed by prison officials.

As the IJ acknowledged, Bratslavski's account of his incarceration was consistent with the background information Bratslavski submitted describing how the Israeli military treats others who refuse military service, all of whom face repeated cycles of short-term sentences until they either enlist or opt for a Profile 21 exemption.  In other words, Bratslavski did not show that his punishment for refusing to comply with Israel's military service law was persecution on account of his religious or political views.  See Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004).

Alternatively, Bratslavski contends he will face economic persecution if returned to Israel because his Profile 21 exemption limits his job opportunities. We agree with the BIA that Bratslavski's limited job opportunities do not rise to the level of economic persecution.  "[E]mployment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution."  Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001).  Bratslavski did not contend, much less show, that he is deprived of all means of earning a living in Israel.  Indeed, Bratslavski was able to find work in Israel in the past and did not lose either his sales agent position or his grocery store manager position because of his Profile 21 exemption.

7

For all these reasons, the BIA did not err in concluding as a matter of law that Bratslavski was ineligible for asylum, and the BIA's determination is supported by substantial evidence in the record as a whole.  Because Bratslavski failed to show asylum eligibility, the BIA correctly concluded that Bratslavski also failed to meet the higher standard of proof for eligibility of withholding of removal under the INA.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1292-93 (11th Cir. 2001).[3]

**PETITION DENIED.**

---

[3]Bratslavski's petition for review does not challenge the BIA's denial of his claim for CAT relief, and thus his CAT claim is deemed abandoned.  See Cole v. U.S. Att'y Gen., 712 F.3d 517, 530 (11th Cir.), cert. denied, 571 U.S. ___, 134 S. Ct. 158 (2013).